**W. H. McGRAW et al., Appellants,**

v.

**The WESTERN COMPANY EMPLOYEES RETIREMENT TRUST PLAN, Appellee.**

**No. 6142.**

Court of Civil Appeals of Texas, El Paso.

Sept. 22, 1971.

Rehearing Denied Oct. 20, 1971.

Andress, Woodgate & Hartt, William Andress, Jr., Dallas, for appellants.

Buck, McBryde, Bogle & Thompson, John McBryde, Fort Worth, for appellee.

OPINION

PRESLAR, Justice.

This is an appeal from a summary judgment granted the Defendant-Appellee in a suit brought by the Plaintiff-Appellants for damages for breach of contract to sell real estate. We affirm.

The Western Company Employees Retirement Trust Plan hereinafter called the Plan, was the owner of the property involved, some ten (10) acres of land located near Richardson, Texas, and the Midland National Bank of Midland, Texas, served in a capacity of Trustee for the Plan. The

Appellant, H. F. Crocker, a real estate broker, wrote the Midland National Bank inquiring whether the property was for sale, and if so, at what price. The Bank sent the letter to the Administrative Committee of the Plan who responded to it by the following letter:

"Dear Mr. Crocker:

> Re: Your Letter of May 16 to Midland National Bank—10.19 acres on Spring Valley Road, Richardson, Texas.

This property is owned by the Western Company Employees Retirement Trust Plan, Midland National Bank, Trustee. The Midland National Bank acts upon authority from the Administrative Committee of the Western Company Employees Retirement Trust Plan.

This is to advise that the property referred to in your letter is for sale. Price is $21,500.00.

> Yours very truly,
>
> /s/ J. S. Brown"

Crocker then prepared and forwarded to the Administrative Committee, a Contract of Sale on a printed form showing the Plan as seller and W. H. McGraw as purchaser. The property was described as being the 10.19 acres "together with all existing improvements including buildings and permanent fencing". As to the purchase price, it provided:

> "The purchase price is $21,500.00, payable as follows: $4,000.00 cash (of which Purchaser has deposited with Harold F. Crocker, Agent, $1,000.00 as earnest money and part payment, the receipt of which is hereby acknowledged by said deposit holder) and the balance to be paid as follows: One note in the amount of $17,500.00, payable $1,750.00 semiannually beginning December 15, 1963, with 6% interest per annum from

date of closing, and with the privilege of paying the note in full on or before date of maturity without penalty."

Upon receipt of this contract, the Committee forwarded it to the Midland National Bank with instructions to sign and return to the Committee, and that was done. Some weeks later, the Committee deleted the signature of the Midland National Bank, by cutting it off, and returned the contract with the following letter:

"Dear Mr. Crocker:

We return herewith, Contract of Sale on property in Richardson, Texas, which we have decided not to execute since our personnel in Dallas believe they will have need of the property longer than it would be available for lease from Mr. McGraw.

We regret not being able to follow through and make this sale. It is entirely possible after 12 to 24 months have elapsed that we will be interested in selling the property if Mr. McGraw is still interested at that time. You might advise him of this information.

> Yours very truly,
>
> /s/ J. S. Brown"

We are of the opinion that there was no meeting of the minds which resulted in an enforcible contract. Appellant contends that the letter of the Committee was an offer of sale which was accepted by the sending of the Contract of Sale, which was signed by the purchaser, McGraw, and the realtor, Crocker, and resulted in a valid contract. We cannot agree. The rule that there must be a meeting of the minds before there can be a valid contract is so well established that no authorities need be cited. An offer to sell a described parcel of land for a stated price was made. The offeree responded, not with an acceptance of that offer, but with a different description of the property, adding thereto, the buildings and permanent fences, and a different consideration of only a down pay-

ment, extended credit terms, interest, prepayment privilege, a provision that seller would pay the realtors commission, and other provisions as to title insurance, abstracts, etc. Clearly, there was no meeting of the minds as to all of these items. Equally clear is the fact that the Contract of Sale was intended by the offeree to be *the* agreement of the parties, it was presented to the prospective seller for acceptance. It was never accepted by the Committee. The negotiations were carried on by Crocker and J. S. Brown for the respective parties. While the Midland National Bank had certain duties and responsibilities as Trustee, it is undisputed that the Administrative Committee had the sole authority to dispose of assets of the Plan, and enter into a contract for the sale of its land. Realtor, Crocker, testified that he never considered that he had a binding contract from the Contract of Sale. Neither party considered that there was such a contract, for negotiations were carried on for months thereafter between Brown and Crocker in an attempt to arrive at an agreement. But no contract arose from those negotiations, for there was always an item on which agreement could not be reached. The testimony of Crocker on that is conclusive.

"To effectuate a binding contract, the minds of the parties thereto must meet with respect to both the subject matter of the agreement and all of its essential terms." 13 Tex.Jur.2nd, p. 127, Contracts, Sec. 14. This statement of the law is controlling of the matters here discussed, and is supported by numerous authorities there cited. See also, Smulcer v. Rogers, Tex. Civ.App., 256 S.W.2d 120, err. ref. N.R.E.

We are of the opinion that the summary judgment proof establishes as a matter of law that no binding agreement was ever reached. In reaching this conclusion, we have viewed the evidence in a light most favorable to the Plaintiff-Appellants, accepted as true, all evidence which tends to support their position, and disregarded all evidence to the contrary. The existence of

an enforcible contract being an essential element of the Plaintiffs' case, and the Defendant having established as a matter of law that there is no genuine issue of fact but that such contract does not exist, it is entitled to the summary judgment which was rendered. Rule 166–A, Texas Rules of Civil Procedure; Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex. 1970).

All points of error have been considered and all are overruled. The judgment of the trial Court is affirmed.